**BIHN & McDANIEL, P.L.C.**
2600 N. Central Ave, Suite 1775
Phoenix, Arizona 85004
(602) 248 9779
Martin A. Bihn (014338)
mbihn@phxlegal.com
Counsel for Plaintiff

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tyrone Ross; | NO. 25-CV-01671 SMB |
| Plaintiff, | **AMENDED COMPLAINT AND JURY DEMAND** |
| vs. | |
| Maricopa County Community College District, an Arizona public entity; Brent Cooper and Mark Wohl | |
| Defendants. | |

Plaintiff for his complaint against defendants alleges as follows:

**INTRODUCTION**

1. This is a racial discrimination and retaliation case. Plaintiff is an African American student, enrolled at Defendant's Gateway Community College Collision Car Repair course. Plaintiff's instructor repeatedly used racial slurs and racially insensitive language including the racial slur "n-word" both in and outside of the classroom context. The instructor's conduct included relating to Plaintiff that the instructor had watched the lynching of a black man during his childhood. Plaintiff filed several internal complaints regarding the

instructor's conduct. Defendant failed to take action and instructor became increasingly hostile toward Plaintiff. Plaintiff finally filed a complaint with the Department of Education Office of Civil Rights. Defendant ultimately forced Plaintiff to resume his course with the same instructor or forfeit his semester. Plaintiff left the course and the school.

**PARTIES**

2. Plaintiff Tyrone Ross ("Plaintiff") is a resident of Maricopa County, Arizona.

3. Defendant Maricopa County Community College District ("MCCC") is an Arizona public entity, authorized and operating community college in Maricopa County, Arizona.

4. Mark Wohl ("Wohl") is a resident of Maricopa County Arizona and is employed by defendant MCCC.

5. Brent Cooper ("Cooper") is a resident of Maricopa County Arizona and is employed by defendant MCCC.

6. MCCC is responsible for the actions of its employees under *respondeat superior*.

**JURISDICTION AND VENUE**

7. This Court has subject matter jurisdiction pursuant 28 U.S.C 1331 over plaintiff's federal claims.

8. Venue is proper as events giving rise to this action occurred in Maricopa County, Arizona.

**FACTUAL BACKGROUND**

9. Gateway Community College ("GCC") is a subdivision of MCCC.

10. Plaintiff enrolled in GCC's collision car repair program

11. Plaintiff's class had twenty students and Plaintiff was the only African American student.

12. Immediately before the first class started Plaintiff met with his instructor, Cooper, to discuss his educational accommodations.

13. Cooper assured Plaintiff that all of his accommodations would be met and that Plaintiff would have no issues in the class.

14. Cooper never accommodated Plaintiff.

**RACIAL COMMENTS**

15. Cooper give an introduction to the whole class and then told the class they were free to leave to go to the auto shop or stay in the classroom.

16. Plaintiff and two other students remained in the classroom.

17. Cooper engaged the three students in a conversation that rapidly shifted to the inappropriate.

18. Cooper moved the conversation from a discussion social media to slavery.

19. Plaintiff disagreed with some Cooper's statements regarding gays and slavery.

20. Cooper followed by making it a point to tell Plaintiff that when he was young his grandfather taken him to lynching.

21. Cooper matter of factly portrayed this lynching as a normal event.

22. Plaintiff was appalled, shocked and disturbed.

23. Plaintiff left and went to Mark Wohl, the administrator overseeing the shop class, and reported Cooper's inappropriate comments and that Plaintiff was uncomfortable with Cooper and the class.

24. The Wohl advised Plaintiff to speak with Cooper and raise his concerns with Cooper.

25. Under MCCC policies Wohl was obligated to forward this matter for internal review and investigation. Wohl failed to follow MCCC policy.

26. For the balance of the day Plaintiff kept his distance from Cooper.

27. Plaintiff continued with the class.

28. Plaintiff tried to speak with Cooper but he was uninterested in Plaintiff's complaints.

29. Upon information and belief Wohl took no action to support Plaintiff or to stop Cooper.

## COOPER'S REFUSAL TO ASSIST PLAINTIFF

30. As the class progressed, Plaintiff began to notice that Cooper was refusing to help him with assignments.

31. When other students needed assistance Cooper would patiently help them. Cooper would get on his hands and knees and work with other non-African American students.

32. When Plaintiff asked for assistance, Cooper would tell Plaintiff that his work was bad or horrible but would not explain how to correct it or even help Plaintiff the way Cooper helped the other students.

4

33. The other students in the class began to notice Cooper's mistreatment of Plaintiff.

34. Other students began to help Plaintiff.

35. When Cooper observed other students helping Plaintiff he warded the students away.

36. Cooper only did this with Plaintiff. Cooper freely allowed other students collaborate and help each other. When it came to the only African American student in the class, Cooper drew the line.

37. On one occasion when Cooper saw a white student assisting Plaintiff. Cooper pulled the white student aside and told him to stop helping Plaintiff because, "It looks like reverse slavery when you are helping Tyrone, you need to stop helping Tyrone."

38. Upon information and belief Cooper's refusal to assist Plaintiff and to bar other student from assisting Plaintiff was due to racial animus and/or because Plaintiff had reported Cooper's previous inappropriate conduct.

39. Plaintiff went to Wohl on numerous occasions to complain about Cooper's refusal to assist him due to his race.

40. Wohl failed to investigate or even further Plaintiff's complaint through MCCC's internal process.

41. Upon information and belief Wohl disclosed Plaintiff's complaints to Cooper but otherwise took no action to aid Plaintiff or to stop Cooper.

**COOPER DISCRIMINATES IN DRESS CODE**

42. GCC had a dress code for the auto repair students.

5

43. Cooper never enforced the dress code against any of the students except for Plaintiff.

44. Cooper allowed students generally to wear street clothes in class and allowed and encouraged female student to wear provocative clothing.

45. On several occasions Cooper would single Plaintiff out in front of the class and ask him why he was wearing dirty clothes or clothes not in line with the dress code.

46. Cooper did so in an effort to embarrass and humiliate Plaintiff.

47. Cooper only singled out Plaintiff, upon information and belief, out of racial animus.

48. Cooper did not call out or address any other students in the class over their dirty or otherwise inappropriate clothing.

49. Upon information and belief Cooper's enforcing dress code against Plaintiff and no other student was due to racial animus and/or because Plaintiff had reported Cooper's previous inappropriate conduct.

50. Plaintiff went to Wohl to complain about Cooper's dress code harassment.

51. Wohl failed to investigate or even further Plaintiff's complaint through MCCC's internal process.

52. Upon information and belief, Wohl disclosed Plaintiff's complaints to Cooper but otherwise took no action to aid Plaintiff or to deter Cooper.

**COOPER DENIES PLAINTIFF ACCESS TO DONTATED SHOP SUPPLIES**

53. Another area in which Cooper treated Plaintiff differently was in access to shop supplies.

54. Shop supplies were donated to the car repair program by local companies.

55. Upon information and belief, the donated shop supplies were to be provided to students with financial hardship.

56. Plaintiff was student with financial hardship.

57. Cooper was aware of Plaintiff's financial hardship.

58. Cooper controlled the distribution of donated supplies for his students.

59. Cooper freely doled out donated supplies to his students, even those without financial need, with the exception of Plaintiff.

60. Plaintiff, the only African American student in the class, was the only student that was denied donated supplies by Cooper.

61. Upon information and belief Cooper's refused Plaintiff's requests for donated supplies due to racial animus and/or because Plaintiff had reported Cooper's previous inappropriate conduct.

62. Plaintiff went to Wohl to complain about Cooper's denial of supplies.

63. Wohl failed to investigate or even further Plaintiff's complaint through MCCC's internal process.

64. Upon information and belief, Wohl disclosed Plaintiff's complaints to Cooper but otherwise took no action to aid Plaintiff or to deter Cooper.

**COOPER DENIES PLAINTIFF USE OF PAINT BOOTH**

65. One of the requirements of the program was that students use of the paint booth to paint autos and auto parts.

66. Cooper intentionally excluded Plaintiff from the paint booth allowing others to use it.

67. On the rare occasions that Cooper did allow Plaintiff to use the paint booth (when no other students needed to paint) Cooper required Plaintiff to clean the paint booth before using it.

68. Plaintiff, the only African American student in the class, was the only student that Cooper required to clean the paint booth before he could use it.

69. Upon information and belief Cooper denied Plaintiff use of the paint booth and then forced Plaintiff to clean the booth due to racial animus and/or because Plaintiff had reported Cooper's previous inappropriate conduct.

70. Plaintiff went to Wohl to complain about being denied use of the paint booth and being forced to clean it.

71. Wohl failed to investigate or even further Plaintiff's complaint through MCCC's internal process.

72. Upon information and belief, Wohl disclosed Plaintiff's complaints to Cooper but otherwise took no action to aid Plaintiff or to deter Cooper.

**COOPER TAKES PLAINTIFF'S CAR KEYS AND DRIVES HIS CAR**

73. Many of the students in Cooper's class worked on their own vehicles as part of the class.

74. Plaintiff also worked on his own vehicle.

75. Plaintiff, like many students left his vehicle at the school.

76. Cooper took an interest in Plaintiff's vehicle and required Plaintiff to leave his vehicle keys with Cooper.

77. Plaintiff did not give Cooper permission to drive the vehicle.

78. On several occasions Plaintiff discovered that his vehicle had been moved and driven by Cooper.

79. Plaintiff was upset that Cooper had driven his vehicle and demanded the keys back.

80. Cooper indicated that the keys were hanging in a rack in his office.

81. When Plaintiff went to retrieve the keys he discovered that only his keys were hanging on the rack.

82. Plaintiff learned that Cooper did not require any of the other students to leave their keys and the Cooper had only driven Plaintiff's vehicle.

83. Upon information and belief Cooper required Plaintiff to provide his car keys and drove Plaintiff's car out of racial animus and/or because Plaintiff had reported Cooper's previous inappropriate conduct.

84. Plaintiff went to Wohl to complain about the car keys and Cooper driving his car without permission.

85. Wohl failed to investigate or even further Plaintiff's complaint through MCCC's internal process.

86. Upon information and belief, Wohl disclosed Plaintiff's complaints to Cooper but otherwise took no action to aid Plaintiff or to deter Cooper.

**PLAINTIFF MAKES FORMAL COMPLAINT**

87. Fed up with the lack of action on his complaint and the racially hostile environment in the classroom, Plaintiff filed a formal complaint with MCCC.

88. Plaintiff withdrew from class while MCCC conducted its investigation.

89. MCCC conducted its investigation substantiated Plaintiff's allegations and concluded it was more likely than not that Cooper created a racially hostile environment for Plaintiff.

90. Among the findings was that Cooper had used the term "ni**er" with Plaintiff; referred to a car aesthetic as "ni**erated"; and had misused Plaintiff's vehicle.

91. Plaintiff met with MCCC officials and it was agreed Plaintiff would return to class but would be under the supervision of a different instructor.

92. The day Plaintiff returned to class he arrived an hour early.

93. As he entered the classroom area he overheard Wohl and Cooper discussing Plaintiff and how they could work to get him to quit school without making it appear that they were discriminating against him.

94. Plaintiff recorded the conversation.

95. Plaintiff went back to class to try to finish work on his vehicle.

96. Plaintiff was supervised by a new instructor for a few days.

97. Then the instructor was transferred and Cooper resumed his supervision of Plaintiff even though MCCC promised Plaintiff that Cooper would play no further role in the Plaintiff's education.

98. Cooper resumed his offensive conduct, creating an intensely racially hostile environment for Plaintiff.

99. Plaintiff was forced to leave school rather than subject himself to continued abuse.

**COUNT ONE**
**TITLE VI**
**Intentional Discrimination/Hostile Environment**

100. Plaintiff incorporates all prior paragraphs as if fully set forth herein.

101. Title VI of the Civil Rights Act, 42 U.S.C. § 2000d *et seq.*, provides:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

102. Defendant MCCC is a recipient of federal financial assistance.

103. As a recipient of federal financial assistance and consistent with Title VI, MCCC may not take action motivated by race, color or national origin discrimination, including excluding individuals, denying benefits of subjecting individuals to segregation or separate treatment.

104. Defendant is responsible for actions and inaction of its employees including Cooper and Wohl under *respondeat superior*.

105. Plaintiff, as an African American man, is a member of a legally recognized protected class.

106. Upon information and belief, MCCC's employees, Cooper and Wohl, intentionally discriminated against Plaintiff based upon his race.

11

107. Similarly situated non-African Americans were not subjected to same actions by MCCC's employees.

108. Defendant and/or its employees had no legitimate non-discriminatory reason or basis for its actions against plaintiff.

109. Cooper's racial harassment, unchecked by Wohl or MCCC created a racially hostile environment in that it was sufficiently severe that would interfere with the educational program of a reasonable person of the same age and race as Plaintiff.

110. MCCC, at multiple points, had notice of the problem and failed to adequately redress the racially hostile environment.

111. Based upon the forgoing, as a direct and proximate result of the conduct as alleged above, Plaintiff's academic and career prospects, and earning potential have been severely harmed, and he has suffered loss of educational and professional opportunities, loss of future career prospects, and other direct and consequential damages.

**COUNT TWO**
**TITLE VI**
**RETALIATION**

112. Plaintiff incorporates all prior paragraphs as if fully set forth herein.

113. Title VI of the Civil Rights Act forbids retaliation against individuals engaging in protected activity including reporting violations of law. *See* 34 C.F.R. § 100.7(e).

114. Plaintiff's protected activities under Title VI include:

   a. Plaintiff reported incidents of differential treatment in his Auto Collision course including the instructor's use of racial slurs to Wohl;

   b. Plaintiff raised race discrimination issues in MCCC's internal grievance procedures by submitting a written complaint;

115. Shortly after his protected activities, Plaintiff was subjected to a series of adverse actions, including but not limited to: Cooper's continued racial harassment of Plaintiff which intensified the racially hostile environment in the classroom.

116. After Plaintiff's written complaint of a racially hostile environment in the classroom was substantiated, Defendant retaliated against Plaintiff by reneging on its plan to remediate the discrimination.

117. Based upon the foregoing, as a direct and proximate result of the Defendant's conduct as alleged above, Plaintiff's academic and career prospects, and earning potential have been severely harmed and he has suffered loss of educational and professional opportunities, loss of future career prospects and other pecuniary and non-pecuniary harm.

**JURY DEMAND**

118. Plaintiff demands a trial by jury.

**WHEREFORE**, the Plaintiff requests that this Court enter judgment against defendants as follows:

    a. Ruling in favor of Plaintiff;

    b. Declaring that Defendants' conduct violated: (a) Title VI of the Civil Rights Act of 1964, (b) 42 U.S.C. § 1981, and (c) the parties' contracts;

    c. Awarding Plaintiff compensatory damages in an amount to be proven at trial;

    d. Awarding Plaintiff punitive damages against defendants in an amount to be proven at trial;

  e. Awarding Plaintiff his attorney's fees and costs under any other applicable provision; and

  f. Granting such other and further relief as is just and proper.

Dated this 11th day of July 2025.

                BIHN & McDANIEL, P.L.C.

                /s/ Martin A. Bihn

                _____
                Martin A. Bihn
                *Counsel for Plaintiff*