Justin S. Pierce (State Bar #022646)
Alexandra N. Cayton (State Bar #038580)
**PIERCE COLEMAN PLLC**
17851 North 85th Street, Suite 175
Scottsdale, Arizona 85255
Tel. (602) 772-5521
Fax (602) 772-5509
Justin@PierceColeman.com
Alex@PierceColeman.com
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Tyrone Ross,<br><br>Plaintiff,<br><br>v.<br><br>Maricopa County Community College District, an Arizona public entity; Brent Cooper; Mark Woehl,<br><br>Defendants. | Case No.: 2:25-CV-01671-PHX-SMB<br><br>**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

Pursuant to Fed. R. Civ. P. 56, Defendants Maricopa County Community College District (the "District"), Brent Cooper ("Cooper"), and Mark Woehl ("Woehl") (collectively "Defendants"), move for summary judgment on all claims and legal theories in Plaintiff's Amended Complaint.[1]

[1] Plaintiff acknowledged in the joint report that the individual Defendants were never served because they are official capacity defendants only. [Doc. 14, p. 4] Title VI claims are not cognizable against individuals. *See, e.g.*, *Braunstein v. Arizona*, No. 2:06-CV-02726 JWS, 2008 WL 11447902, at *3 (D. Ariz. May 1, 2008) ("For the reasons above, the court concludes that a claim for damages under 42 U.S.C. § 2000d cannot be pursued against the individual defendants."); *Frankel v. Regents of Univ. of California*, 805 F. Supp. 3d 1091, 1100 (C.D. Cal. 2025) ("Based on a review of the case law, and considering the parties' arguments at the motion hearing, the Court is convinced that Title VI claims are only applicable against the university and not against university officials.").

**INTRODUCTION**

Plaintiff was a student in the GateWay Community College ("GWCC") Autobody/Collision Repair Program (the "Program"). [SOF 1] He brought claims against the District pursuant to Title VI of the Civil Rights Act of 1964 ("Title VI") arising from the alleged conduct of Program Instructor Cooper. The undisputed evidence establishes that, upon learning of Plaintiff's concerns regarding Cooper's conduct, GWCC took prompt, reasonable, and effective action to remedy any alleged discrimination, harassment, and/or retaliation. [*See* SOF 14–16, 24–33, 37–41] GWCC investigated Plaintiff's complaints, implemented a no-contact directive between Plaintiff and Cooper, and placed Cooper on administrative leave pending the outcome of the investigation. [*See id.*] GWCC also provided Plaintiff additional time to complete the Program after he was withdrawn under GWCC policy due to excessive absences. [*See* SOF 17–18, 24–25] Plaintiff successfully completed the Program in April 2023, and Cooper ultimately resigned in lieu of termination. [SOF 31–33, 41] The Court should grant summary judgment in Defendants' favor for two independent, yet equally compelling, reasons:

First, Plaintiff's claims are barred by the applicable statute of limitations, which is fully dispositive of the case. Title VI borrows Arizona's two-year statute of limitations for personal injury actions. *Bonelli v. Grand Canyon Univ.*, 28 F.4th 948, 951–52 (9th Cir. 2022) (finding that the statute of limitations for Title VI claims is two years). Plaintiff's claims accrued no later than March 9, 2023, when Cooper, the alleged wrongdoer, was placed on administrative leave and any alleged discriminatory and/or harassing conduct ceased. [SOF 29–30, 37] Plaintiff did not file this action until May 16, 2025, more than two years later. [SOF 42] His claims are therefore untimely.

Second, even if the claims were timely, they fail on the merits. The District may be held liable for damages under Title VI only if a legally appropriate District official had actual notice of the alleged misconduct and responded with deliberate indifference. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 281 (1998). The record establishes the opposite of deliberate indifference. Upon receiving Plaintiff's complaints, GWCC

promptly investigated, implemented protective measures, eventually removed Cooper from the Program, and Cooper resigned in lieu of termination. [*See* SOF 14–16, 24–33, 37–41] On these facts, no reasonable jury could conclude that the District acted with deliberate indifference or otherwise violated Title VI. As a matter of law, the District's actions foreclose any finding of deliberate indifference and thus any basis for Title VI liability.

The following Memorandum of Points and Authorities and concurrently filed Statement of Facts support this Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. FACTUAL BACKGROUND.

Plaintiff began the Program in May 2022. [SOF 2] The Program is a training course that provides students with knowledge and hands-on experience needed to start a career in the automotive collision repair industry. [SOF 3] Cooper was a Program Instructor, and Woehl was the Program Manager for all of GWCC's "clock hour" programs.[2] [SOF 4]

On December 6, 2022, Plaintiff emailed Craig Urbanski ("Urbanski"), GWCC's Industrial Technology/Division Chair at the time, claiming that Cooper engaged in conduct that could violate the District's anti-discrimination and harassment policy (hereinafter "Complaint 1"). [SOF 10] On December 8, 2022, GWCC's Vice President of Student Affairs Dr. Delfina Wilson ("Wilson") received Complaint 1. [SOF 14] GWCC immediately opened an investigation. [*See* SOF 16]

Plaintiff stopped attending the Program on December 6, 2022, and was withdrawn from the Program for excessive absences in accordance with GWCC policy on December 13, 2022. [SOF 17–18] After Plaintiff later informed GWCC that he wished to complete the Program, GWCC worked to identify a solution that would allow him to return. [SOF 20–25] With Plaintiff's agreement, GWCC readmitted Plaintiff to the Program on or

---

[2] A clock-hour program requires students to complete a specified number of instructional and training hours to satisfy the program's graduation requirements. [SOF 5, 17] Students must maintain 100% attendance and complete all required training hours to graduate from the Program. [*Id.*]

about February 8, 2023, under the supervision of Associate Program Instructor Michael Hernandez ("Hernandez"). [SOF 6, 24] Cooper was not to have any contact with Plaintiff. [SOF 27]

On or about February 27, 2023, GWCC completed its investigation of Complaint 1 and largely substantiated Plaintiff's allegations. [SOF 27] The investigation concluded that Cooper more likely than not contributed to the creation of a hostile learning environment for Plaintiff and potentially other students. [*Id.*] It further found that Cooper managed classroom conduct and resources in a manner that unfairly favored the only female student in the course to the detriment of the male students. [*Id.*]

About a week later, on March 7, 2023, Plaintiff reported new concerns to GWCC regarding alleged retaliation by Cooper. [SOF 28] In response to those concerns and the pending disciplinary action arising from the investigation into Complaint 1, GWCC placed Cooper on administrative leave effective March 9, 2023. [SOF 29] Cooper never returned to active employment with the District after being placed on leave. [SOF 30]

On April 13, 2023, Plaintiff successfully completed the Program. [SOF 31] He earned a grade "A" in all courses. [SOF 33] After picking up his belongings the day after he completed the Program, Plaintiff did not return to campus. [SOF 36] Soon after Plaintiff completed the Program, GWCC initiated an investigation of Plaintiff's second internal complaint regarding alleged retaliation from Cooper (hereinafter "Complaint 2"). [SOF 38] On or about May 10, 2023, GWCC completed the investigation into Complaint 2 and substantiated Plaintiff's allegations. [SOF 39] Over two years later, on May 16, 2025, Plaintiff filed suit against Defendants, claiming race discrimination and retaliation under Title VI. [SOF 42–44]

Today, Plaintiff has his (1) Certificate of Competency and (2) an immaculate Program transcript.[3] [SOF 32–33] Both of Plaintiff's internal complaints were promptly

---

[3] A Certificate of Competency is essentially a diploma certifying that Plaintiff has completed the Program and is qualified to work in the autobody collision and repair industry. [SOF 32]

and thoroughly investigated in accordance with GWCC/District policy. [*See* SOF 40] Cooper resigned in lieu of termination and has never worked for the District again. [SOF 30, 41] The District took prompt and effective corrective action to address Plaintiff's concerns, exceeding its legal obligations under the circumstances. [*See* SOF 14–16, 24–33, 37–41] Accordingly, Plaintiff cannot establish a basis for holding the District liable for an alleged violation of Title VI. The Court should award summary judgment to the District.

## II. PLAINTIFF'S TITLE VI CLAIMS ARE TIME-BARRED, AND THEREFORE ARE FATALLY FLAWED AS A MATTER OF LAW.

Title VI, 42 U.S.C. § 2000(d) *et seq.*, borrows the forum state's personal-injury limitations period. The Ninth Circuit has squarely held that "[t]he statute of limitations for federal civil rights claims under sections 1981, 1983, and ***2000(d)*** is governed by the forum state's statute of limitations for personal injury actions," and under Arizona law that period is two years. *Bonelli*, 28 F.4th at 951–52 (emphasis added); *see also Stanley v. Trs. of California State Univ.*, 433 F.3d 1129, 1135 (9th Cir. 2006) (noting that state personal injury statutes of limitations apply to Title VI); *Taylor v. Regents of Univ. of Cal.*, 993 F.2d 710, 711–12 (9th Cir. 1993) (per curiam) (holding that Title VI claims are governed by the forum state's statute of limitations for personal injury actions); A.R.S. § 12-542 (Arizona's personal-injury statute requires that such actions "be commenced and prosecuted within two years after the cause of action accrues, and not afterward[.]").

Although state law fixes the length of the limitations period, "federal law determines when a civil rights claim accrues," and the general rule is that a claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Bonelli*, 28 F.4th at 952. "The proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful." *Stanley*, 433 F.3d at 1136 (analyzing the rule under Title IX of the Education Amendments of 1972 ("Title IX"), which is interpreted consistently with Title VI).

Plaintiff's claims are time-barred because they accrued no later than March 9, 2023 (and likely earlier) when Cooper was removed from the school. He filed this lawsuit more than two years later. [*See* SOF 29, 42] The record establishes that every act underlying Plaintiff's discrimination, retaliation, and/or hostile educational environment claims is attributed to Cooper. Cooper was placed on administrative leave and removed from the classroom effective March 9, 2023, a fact that Plaintiff cannot genuinely dispute. [SOF 29] As a result, March 9, 2023, represents the latest possible date on which Cooper could have engaged in any alleged discrimination, harassment, or retaliation against Plaintiff.[4] Therefore, March 9, 2023, marks the accrual date for Plaintiff's Title VI claims because Plaintiff was plainly aware of the conduct he now alleges caused him injury. Indeed, Plaintiff's latest allegations involved alleged retaliation, and Plaintiff demonstrated awareness of the alleged injury by reporting those concerns to the District before March 9, 2023. [*See* SOF 28]

Furthermore, there is no evidence of a single act of discrimination, retaliation, and/or harassment occurring after Cooper's removal from the Program. *See Bonelli*, 28 F.4th at 952–53 ("*Lukovsky* thus confirms that Bonelli's § 1981 and § 2000d claims also accrued at the time of his alleged injury. Although Bonelli is not specific as to GCU's allegedly discriminatory actions, he does not claim that GCU engaged in discriminatory acts beyond August 24, 2017. And there is no dispute that Bonelli was aware of his alleged injuries by that date."). Accordingly, Plaintiff's claims accrued no later than March 9, 2023, the last date on which Cooper could have engaged in the conduct allegedly causing Plaintiff's injury and the date by which Plaintiff was aware of the conduct underlying his claims. Given that Plaintiff failed to file this lawsuit by March 9, 2025, his Title VI claims are untimely and fail as a matter of law.

---

[4] The operative date may, in fact, be earlier than March 9, 2023. However, Defendants use March 9, 2023 as the accrual date for purposes of this Motion because no set of facts could make it later than that.

Even under the most generous view of the facts, Plaintiff's Title VI claims could not have accrued later than April 13, 2023, his final day in the Program. [SOF 31] Plaintiff testified that the last time he saw Cooper was before April 5, 2023. [SOF 35–36] However, any alleged harassing, discriminatory, and/or retaliatory conduct necessarily ceased at the absolute latest by April 13, 2023.[5] Thus, even under the most favorable accrual date available to Plaintiff—April 13, 2023—his claims are still barred by the applicable statute of limitation. Plaintiff would have had to file suit by April 13, 2025. He did not do so.[6] [*See* SOF 42] Accordingly, Plaintiff's Title VI claims are time-barred.

## III. THE DISTRICT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S TITLE VI CLAIMS BECAUSE THE DISTRICT CANNOT BE HELD LIABLE FOR COOPER'S ALLEGED DISCRIMINATION AND/OR HARASSMENT.

In addition to being untimely, the claims also fail on the merits. There are no allegations or any evidence that the District independently subjected Plaintiff to disparate treatment because of his race. Accordingly, as discussed in further detail below, Plaintiff can hold the District liable for Cooper's alleged conduct *only* by establishing that an appropriate District official had actual notice of the alleged discrimination and/or harassment and responded with deliberate indifference. *Gebser*, 524 U.S. at 281. The undisputed evidence establishes that the District *did not* act with deliberate indifference.

Because Title VI and Title IX "operate in the same manner," courts apply the Supreme Court's Title IX framework governing a school district's liability for a teacher's sexual harassment of a student when evaluating Title VI race discrimination claims. *Id*. at 286. Under that framework, "damages may not be recovered ... unless an official of the

---

[5] The undisputed evidence establishes that Cooper was placed on administrative leave on March 9, 2023, and the record contains no evidence that Cooper had any contact with Plaintiff after that date. [SOF 29, 35–39]

[6] The Amended Complaint contains no allegations that the District itself engaged in discrimination or harassment. To the contrary, the undisputed evidence establishes that the District promptly and thoroughly investigated Plaintiff's complaints and granted him additional time to complete the Program, which he completed and for which he received his certificate. [*See* SOF 14–16, 24–33, 37–41]

school district who at a minimum has authority to institute corrective measures on the district's behalf has actual notice of, and is deliberately indifferent to, the teacher's misconduct." *Id.* at 277. The District cannot be held liable on "principles of respondeat superior or constructive notice." *Id.* at 285. As the District of Hawaii aptly noted:

> The Court notes that all of these allegedly adverse actions were taken by employees of Defendant, and not Defendant itself. Indeed, Plaintiff asserts in the First Amended Complaint that 'Defendant, through its agents, engaged in a campaign of retaliation against Plaintiff.' However, as already discussed in footnote 3, there is no agency or respondeat superior liability under Title VI unless a state entity receiving federal funding 'has actual notice of the discrimination and responds with deliberate indifference or if it intentionally engages in discriminatory conduct.' Plaintiff has not alleged, nor produced any evidence to demonstrate that Defendant had actual notice of these 'adverse actions', much less that they responded with deliberate indifference or intentionally retaliated against Plaintiff … Without the requisite knowledge of any adverse actions, and in the absence of any allegations that Defendant itself took actions against Plaintiff, there is no genuine issue of material fact that Defendant has not retaliated against Plaintiff.

*Dearing v. Hawai'i Dep't of Educ.*, No. CV 05-00633 KSC, 2007 WL 9711203, at *5 (D. Haw. Nov. 9, 2007) (internal citations omitted) (emphasis in original).

Plaintiff's Amended Complaint rests on precisely that impermissible theory—it alleges the District "is responsible for the actions of its employees under respondeat superior." [SOF 49] The undisputed evidence establishes that once GWCC had actual notice of Cooper's alleged conduct, it responded promptly, reasonably, and effectively to address Plaintiff's allegations.

### A. The District Did Not Have Actual Notice of Alleged Discrimination or Harassment Until December 8, 2022.

On December 6, 2022, Plaintiff emailed Complaint 1 to Urbanski and Woehl. [SOF 10, 12] On December 8, 2022, Wilson received a copy of Complaint 1. [SOF 14] GWCC immediately opened an investigation. [SOF 16]

To the extent Plaintiff argues that the District had actual notice before December 8, 2022, he is mistaken. For the District to have "actual notice," information regarding alleged discrimination and/or harassment must be shared with a District "official who at a

minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf[.]" *Gebser*, 524 U.S. at 290. The only individuals Plaintiff identifies as having knowledge of Cooper's alleged discriminatory and/or harassing conduct before December 6, 2022, are Woehl, Hernandez, and Woehl's front desk clerk.[7] [SOF 50] Although the District disputes the extent of these individuals' alleged knowledge, even assuming they were aware of the conduct at issue, their knowledge cannot be imputed to the District. [*See* SOF 7, 15, 51]

Under District/GWCC policy at the time Plaintiff was enrolled at GWCC, if a student filed a formal discrimination complaint, the Vice President of Student Affairs ("VPSA") at the student's respective college was responsible for and had authority to investigate the student's complaints. [SOF 7–9] Furthermore, the District's policy provided that VPSAs were responsible for ensuring that appropriate corrective action was taken when warranted. [*Id.*] Thus, under District policy, Wilson (*i.e.*, GWCC's VPSA) is a District official with authority to address allegations of discrimination and implement corrective measures on the District's behalf. [SOF 15] Therefore, the District received actual notice of Cooper's alleged conduct when Wilson received Plaintiff's Complaint 1 on December 8, 2022. [*See* SOF 14]

By contrast, Woehl, Hernandez, and Woehl's clerk were merely GWCC instructional personnel or staff. [SOF 4, 6, 50–51] They had no authority to investigate alleged discrimination and/or harassment by GWCC employees or students; they are not designated under District policy as individuals responsible for receiving or responding to discrimination and/or harassment complaints; and they are not authorized to make decisions regarding discrimination and/or harassment complaints on the District's behalf. [SOF 7, 51] Therefore, as a matter of law, their alleged knowledge is insufficient to establish actual notice on behalf of the District. *See Gebser*, 524 U.S. at 290.

---

[7] Plaintiff also reported that on or about December 6, 2022, he told a "hairdresser guy" that he wanted to file a complaint against Cooper, and the guy helped him put his complaint into writing. [SOF 13]

**B. The District Did Not Act with Deliberate Indifference to Cooper's Alleged Conduct.**

Deliberate indifference is "a high standard" to meet. *Mungai v. Univ. of Minnesota*, 141 F.4th 959, 965 (8th Cir. 2025), *citing Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 643 (1999). Plaintiff therefore must establish that the District's response to his complaints was "clearly unreasonable in light of the known circumstances," amounting to "an official decision ... not to remedy" the alleged discrimination. *Karasek v. Regents of Univ. of California*, 956 F.3d 1093, 1105–06 (9th Cir. 2020); *Oden v. N. Marianas Coll.*, 440 F.3d 1085, 1090 (9th Cir. 2006) (A "negligent, lazy, or careless response" will not suffice).

The *Garcia ex rel. Marin v. Clovis Unified Sch. Dist.* case is instructive as to what *does not* constitute deliberate indifference. 627 F. Supp. 2d 1187, 1197–98 (E.D. Cal. Apr. 16, 2009). There, a student sued a school district under Title IX, alleging that her former teacher had sexually harassed her and that the district failed to adequately address the teacher's misconduct. *Id.* at 1192. The court concluded that the plaintiff failed to allege facts sufficient to establish deliberate indifference, and therefore dismissed the plaintiff's claims, explaining:

> After reviewing the Complaint, the Court believes that the facts pled by [the plaintiff] do not show deliberate indifference. [The plaintiff] does not dispute [the district's] contention that the first time [the district] had notice of the November and March Incidents was at the April 1, 2008 meeting. At the meeting, [the plaintiff] requested to be removed from [the teacher's] class and that request was granted. This response would eliminate the regular and prolonged contact that [the plaintiff] would have with [the teacher] in his math class. As such, in the spectrum of possible remedial conduct, it was not one that naturally would cause [the plaintiff] to undergo harassment by [the teacher] or make her liable or vulnerable to it.
>
> [The plaintiff] contends that [the teacher's] harassing conduct continued after April 1 because [the teacher] would 'leer and stare' at her. However, that an initial response does not remedy or prevent harassment from occurring is not, in and of itself, sufficient grounds for liability. [The plaintiff's] allegations show that after she complained to [the district] (albeit through her attorneys) about [the teacher's] leering and staring, [the district] responded. After [the plaintiff] complained about this conduct, [the district] removed [the teacher] from the classroom altogether. The Complaint shows that [the district] did

> not fail to respond to [the plaintiff's] additional complaints. [The district] took further corrective action beyond its initial response of removing [the plaintiff] from [the teacher's] classroom. In other words, once it received word that further harassing conduct was occurring, [the district] tried a different course of corrective conduct. *Cf. Vance,* 231 F.3d at 261–62 (holding that deliberate indifference may be shown by continuing to utilize the same failed responses to complaints of harassment). Removing [the teacher] from any classroom duties is a form of punishment and it was done as result of [the plaintiff's] complaints. It is not a response that naturally would cause [the plaintiff] to undergo harassment by [the teacher] or make her liable or vulnerable to it.

*Id.* at 1197 (internal citations omitted).

The factual similarities between this case and *Garcia* are striking. Upon receiving Complaint 1, GWCC immediately initiated an investigation. [SOF 16] Like the school district in *Garcia*, GWCC implemented prompt and effective corrective measures designed to eliminate further contact between Plaintiff and Cooper upon Plaintiff's return to the Program. [SOF 24–26] Specifically, GWCC issued a no-contact directive prohibiting Cooper from speaking to Plaintiff and reassigned Plaintiff to a different instructor, Hernandez, for the remainder of the Program. [*Id.*] Plaintiff agreed to this arrangement. [SOF 24] Although Plaintiff later alleged that additional interactions with Cooper occurred, those allegations do not undermine the reasonableness of GWCC's response. Once Plaintiff submitted a retaliation complaint against Cooper, GWCC escalated its response by placing Cooper on administrative leave. [SOF 28–29]

Significantly, there is no legitimate evidence that Plaintiff experienced any further discriminatory, harassing, and/or retaliatory conduct after Cooper was placed on leave. GWCC then promptly investigated Plaintiff's retaliation complaint, ultimately sustaining it. [SOF 38–40] Cooper resigned in lieu of termination. [SOF 41] These undisputed facts demonstrate that GWCC took Plaintiff's complaints seriously, investigated them promptly, and implemented progressively stronger remedial measures as circumstances warranted. *See also Oden*, 440 F.3d at 1089 (finding no deliberate indifference where, despite a nine-month delay in holding a hearing on the plaintiff's sexual harassment complaint that violated the college's policy, the plaintiff suffered no prejudice and the

college promptly assisted her, prevented further contact with the instructor, substantiated her complaint, and recommended disciplinary action, short of dismissal). Unlike the institution in *Oden* where the court nevertheless found no deliberate indifference, GWCC responded to Plaintiff's complaints in accordance with its policies and procedures, further demonstrating that its response was not clearly unreasonable. [SOF 40]

The undisputed evidence demonstrates that GWCC's response to Plaintiff's complaints was neither "clearly unreasonable" nor ineffective. *See Karasek*, 956 F.3d at 1105. Plaintiff himself acknowledged as much, testifying that he did not believe there was anything the District could have done differently to prevent him from filing this lawsuit because, if there had been, "they would have done it." [SOF 48] Accordingly, Plaintiff cannot establish deliberate indifference, and the District cannot be held liable for damages under Title VI.[8]

**CONCLUSION**

Both Title VI claims in this lawsuit fail as a matter of law. Plaintiff's claims are time-barred. Even if they were timely, they independently fail because the District cannot be held liable absent actual notice and deliberate indifference, and the undisputed evidence establishes that the District promptly investigated and appropriately responded to Plaintiff's internal complaints. Because Plaintiff cannot establish multiple essential elements of his Title VI claims, no genuine dispute of material fact exists. The Court should therefore grant summary judgment in Defendants' favor.

/ / /

/ / /

---

[8] Plaintiff does not seek injunctive relief. Instead, in addition to monetary damages, he seeks declaratory relief that Defendants violated Title VI and the parties' undefined contracts. That request fails because the undisputed evidence establishes that Defendants are entitled to summary judgment on all claims.

RESPECTFULLY SUBMITTED this 27th day of August, 2026.

**PIERCE COLEMAN PLLC**

By /s/*Alexandra N. Cayton*
Justin S. Pierce
Alexandra N. Cayton
17851 North 85th Street, Suite 175
Scottsdale, Arizona 85255
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on August 27, 2026 I electronically transmitted the attached document to the Clerk's Office using the ECF System for filing, causing a copy to be electronically transmitted to the following ECF registrants:

Sean A. Woods
**MILLS + WOODS LAW, PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
swoods@millsandwoods.com
*Attorney for Plaintiff*

By: /s/ *Mary Walker*