Justin S. Pierce (State Bar #022646)
Alexandra N. Cayton (State Bar #038580)
**PIERCE COLEMAN PLLC**
17851 North 85th Street, Suite 175
Scottsdale, Arizona 85255
Tel. (602) 772-5521
Fax (602) 772-5509
Justin@PierceColeman.com
Alex@PierceColeman.com
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Tyrone Ross,<br><br>Plaintiff,<br><br>v.<br><br>Maricopa County Community College District, an Arizona public entity; Brent Cooper; Mark Woehl,<br><br>Defendants. | Case No.: 2:25-CV-01671-PHX-SMB<br><br>**DEFENDANTS' STATEMENT OF FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

Pursuant to Fed. R. Civ. P. 56 and LRCiv. P. 56.1(a), Defendants Maricopa County Community College District (the "District"), Brent Cooper ("Cooper"), and Mark Woehl ("Woehl") (collectively "Defendants") submit this statement of undisputed material facts in support of their Motion for Summary Judgment.

1. Plaintiff Tyrone Ross ("Plaintiff") was a student in the GateWay Community College ("GWCC") Autobody/Collision Repair Program (the "Program"). [Excerpts from Deposition of Tyrone Ross & Deposition Exhibits, attached as **Exhibit A** ("Ross Dep.") 7:23–8:14, 46:17–22; Doc. 10 at ¶ 10]
2. Plaintiff began the Program in May 2022. [*Id.*]

3. The Program is a training course that provides students with knowledge and hands-on experience needed to start a career in the automotive collision repair industry. [*See* Ross Dep. at 46:17–48:2; Deposition of Mark Woehl, attached as **Exhibit B** ("Woehl Dep.") 13:12–22]
4. Cooper was the lead Program Instructor, and Woehl was the Program Manager for all of GWCC's "clock hour" programs. [Woehl Dep. 7:19–23, 8:11–14, 11:13–22, 14:19–15:19; *see also* Ross Dep. 101:22–25]
5. A clock-hour program requires students to complete a specified number of instructional and training hours to satisfy the program's graduation requirements. [Woehl Dep. 7:19–8:6; *see also* Ross Dep. 48:3–9]
6. Michael Hernandez ("Hernandez") was an Associate Instructor for the Program. [Declaration of Dr. Delfina Wilson, attached as **Exhibit C** ("Wilson Dec.") ¶ 27; *see also* Ross Dep. 101:22–25]
7. Under District/GWCC policy at the time Plaintiff was enrolled at GWCC, if a student filed a formal discrimination complaint, the Vice President of Student Affairs ("VPSA") at the student's respective college was responsible for and had authority to investigate the student's complaints. [Wilson Dec. ¶¶ 5–10] Furthermore, District/GWCC's policy provided that VPSAs were responsible for ensuring that appropriate corrective action was taken when warranted. [*Id.* at ¶¶ 8–10]
8. A link to the District/GWCC's non-discrimination policies is found on the Program Syllabi. [*See* Program Syllabi, attached as **Exhibit D** at pgs. 6, 12, 18–19, 25]
9. Plaintiff testified that Cooper read the Program Syllabus to him. [Ross Dep. 47:19–48:2, 50:1–7, 109:9–110:3]
10. On December 6, 2022, Plaintiff emailed Craig Urbanski ("Urbanski"), GWCC's Industrial Technology/Division Chair at the time, with the Subject Line stating "withdrawal if possible[,]" alleging that Cooper engaged in conduct that potentially

violated the District's anti-discrimination and harassment policy (hereinafter "Complaint 1"). [Ross Dep. 60:18–61:16, 67:15–18; Wilson Dec. ¶ 11; Woehl Dep. 12:18–24]

11. Plaintiff testified that his email to Urbanski on December 6, 2022 was the first time he elevated his concerns about Cooper above Woehl. [Ross Dep. 76:22–77:1]

12. On December 6, 2022, Plaintiff also emailed Woehl a copy of Complaint 1. [Wilson Dec. ¶ 13; Woehl Dep. 12:18–24]

13. Plaintiff testified that on or about December 6, 2022, he also told a "hairdresser guy" that he wanted to file a complaint against Cooper, and the guy helped him put his complaint into writing. [*See* Ross Dep. 67:15–69:2]

14. On December 8, 2022, GWCC's VPSA Dr. Defina Wilson ("Wilson") received a copy of Complaint 1. [Wilson Dec. ¶ 15]

15. Under District policy, Wilson has authority to investigate alleged discrimination and/or harassment by GWCC employees or students; she is designated under District/GWCC policy as an individual responsible for receiving or responding to discrimination and/or harassment complaints; and she is authorized to make decisions regarding discrimination and/or harassment complaints on GWCC's behalf. [Wilson Dec. ¶ 10]

16. On or about December 9, 2022, GWCC opened an investigation into Complaint 1. [Wilson Dec. ¶ 17; *see also* Ross Dep. 76:22–77:14]

17. According to GWCC's 2022-2023 Attendance Policies, "Students enrolled in clock-hour programs must complete 100% of the required hours for each course within their program" and "Students who fall below the 90% attendance hours may be withdrawn from the course[.]" [GWCC 2022-2023 Attendance Policies, attached as **Exhibit E**; *see also* Ex. D]

18. Plaintiff stopped attending the Program on December 6, 2022, and was withdrawn from the Program for excessive absences on December 13, 2022. [Doc. 10 at ¶ 88;

Ross Dep. 27:1–5, 77:8–19; 78:2–15, 78:24–79:1, 124:2–13; Wilson Dec. ¶ 21; *see also* Ex. E]

19. GWCC informed Plaintiff that he was withdrawn from the Program for excessive absences on multiple occasions. [Wilson Dec. ¶¶ 25, 27]

20. On January 3, 2023, Plaintiff emailed Diaz stating that he was worried that he would not be able to receive his certificate of competency because he was dropped from the Program. [Declaration of Dr. Amy Diaz, attached as **Exhibit F**, ¶ 12 ("Diaz Dec."); Wilson Dec. ¶ 23; *see also* Ross Dep. at 77:8–78:15; 78:24–79:16]

21. It was at this time that GWCC became aware that Plaintiff wanted to return to the Program. [*See* Diaz Dec. ¶ 13]

22. GWCC then worked to identify a solution that would allow Plaintiff to return to the Program. [Wilson Dec. ¶¶ 23–31]

23. Plaintiff missed multiple prescheduled meetings with GWCC officials to discuss his options to return to the Program. [Wilson Dec. ¶¶ 24–28]

24. With Plaintiff's agreement, GWCC readmitted Plaintiff to the Program on or about February 8, 2023, under Hernandez's supervision. [Doc. 10 at ¶ 91; Ross Dep. 35:4–10, 54:25–55:3, 79:6–16; Wilson Dec. ¶¶ 30–31; Woehl Dep. 13:23–14:4]

25. GWCC provided Plaintiff with additional time to complete the Program. [*See* Wilson Dec. ¶ 31; *see* Ross Dep. 27:9–12]

26. Cooper was not to have any contact with Plaintiff. [Wilson Dec. ¶¶ 30–32; *see also* Ross Dep. 35:7–10, 54:25–55:3; 79:6–16, 106:7–9, 106:21–107:2]

27. On or about February 27, 2023, GWCC completed its investigation of Complaint 1 and largely substantiated Plaintiff's allegations. [Wilson Dec. ¶ 33; *see also* Diaz Dec. ¶ 17; Doc. 10 at ¶¶ 89–90] The investigation concluded that Cooper more likely than not contributed to the creation of a hostile learning environment for Plaintiff and potentially other students. It further found that Cooper managed

classroom conduct and resources in a manner that unfairly favored the sole female student in the course to the detriment of the male students. [*Id.*]

28. On March 7, 2023, Plaintiff reported to GWCC new concerns regarding alleged retaliation by Cooper. [Wilson Dec. ¶ 34]

29. In response to Plaintiff's concerns and the pending disciplinary action arising from the investigation into Complaint 1, GWCC placed Cooper on administrative leave effective March 9, 2023. [Diaz Dec. ¶¶ 15, 26; Administrative Leave Letter, attached as **Exhibit G**]

30. Cooper never returned to active employment with GWCC or the District after being placed on administrative leave. [Diaz Dec. ¶ 15]

31. Plaintiff completed the Program on April 13, 2023. [Diaz Dec. ¶ 19; Ross Dep. 27:5–12, 28:5–29:20, 33:1–18, 44:2–19]

32. Plaintiff received his Certificate of Competency. [Diaz Dec. ¶¶ 20, 27; Plaintiff's Certificate of Competency, attached as **Exhibit H**] A Certificate of Competency is essentially a diploma certifying that Plaintiff has completed the Program and is qualified to work in the autobody collision and repair industry. [Diaz Dec. ¶ 20]

33. Plaintiff received a grade "A" in all courses. [Plaintiff's Program Transcript, attached as **Exhibit I**; Diaz Dec. ¶¶ 21, 27; *see also* Ross Dep. 51:12–52:6]

34. Plaintiff testified that he expected that he would finish the Program about a year or two after he started. [Ross Dep. 25:4–13]

35. Plaintiff testified that he believes the last day he saw Cooper or had any interaction with him was before April 5, 2023. [Ross Dep. 36:4–9, 45:1–46:12]

36. Plaintiff testified that he believes the last time he stepped foot on GWCC's campus was the day after he completed the Program to get his belongings. [Ross. Dep. 44:2–13] When asked if he went back any later than that, he responded, "I don't believe so." [*Id.*]

37. The District did not allow Cooper to come to GWCC's campus once he was placed on administrative leave and before Plaintiff completed the Program. [Diaz Dec. ¶ 16]
38. In April 2023, GWCC initiated an investigation of Plaintiff's second internal complaint regarding alleged retaliation from Cooper (hereinafter "Complaint 2"). [Wilson Dec. ¶ 35]
39. On or about May 10, 2023, GWCC completed the investigation into Complaint 2 and substantiated Plaintiff's allegations. [Wilson Dec. ¶ 36; *see also* Diaz Dec. ¶ 23]
40. Both of Plaintiff's internal complaints were investigated in accordance with District policy. [Wilson Dec. ¶ 37]
41. Cooper resigned in lieu of termination. [Diaz Dec. ¶ 24]
42. On May 16, 2025, Plaintiff filed suit against the Defendants, asserting claims for alleged violations of Title VI of the Civil Rights Act of 1964 ("Title VI"), breach of contract, and for race discrimination under 42 U.S.C. § 1981. [Doc. 1]
43. On July 11, 2025, Plaintiff filed an Amended Complaint removing his breach of contract and Section 1983 claims. [Doc. 10]
44. Plaintiff's only remaining claims are for alleged race discrimination and retaliation under Title VI. [Doc. 10] His Title VI claims arise primarily from the alleged conduct of Cooper. [*See generally id.*]
45. Plaintiff does not allege District itself intentionally discriminated against him on the basis of race. [*See generally* Doc. 10] Instead, Plaintiff alleges that the District "had notice of the problem and failed to adequately redress the racially hostile environment" and retaliated against Plaintiff by "reneging on its plan to remediate the discrimination." [*Id.* at ¶ 116]
46. Plaintiff testified that he was not aware of anyone other than Cooper making any racist comments to him. [Ross Dep. 100:22–24]

47. In response to a question from Defendants' counsel regarding "Was there anybody else [as in besides Cooper] that you felt treated you improperly because of your race?" Plaintiff testified, "I can't really say that[.]" [Ross Dep. 97:25–98:5]
48. In response to a question from Defendants' counsel regarding "What could the district have done differently that would have caused you not to bring this lawsuit?" Plaintiff testified, "Honestly, I – I just – I feel like there's nothing they could have done, 'cause they would have done it." [Ross Dep. 102:22–103:5]
49. Plaintiff alleges the District "is responsible for the actions of its employees under respondeat superior." [Doc. 10 at ¶ 104]
50. The only individuals Plaintiff identifies as having knowledge of Cooper's alleged discriminatory and/or harassing conduct before December 6, 2022, are Woehl, Hernandez, and Woehl's front desk clerk. [Ross Dep. 62:2–15, 65:5–21, 67:15–18, 76:22–77:1]
51. Woehl, Hernandez, and Woehl's front desk clerk did not have any authority to investigate alleged discrimination and/or harassment by GWCC employees or students; they are not designated under District/GWCC policy as individuals responsible for receiving or responding to discrimination and/or harassment complaints; and they are not authorized to make decisions regarding discrimination and/or harassment complaints on the District's or GWCC's behalf. [Wilson Dec. ¶¶ 12, 14; Diaz Dec. ¶ 25; *see also* Woehl Dep. 19:5–20:16, 25:19–27:1, 52:1–9, 53:8–54:3]

RESPECTFULLY SUBMITTED this 27th day of August, 2026.

**PIERCE COLEMAN PLLC**

By /s/*Alexandra N. Cayton*
Justin S. Pierce
Alexandra N. Cayton
17851 North 85th Street, Suite 175
Scottsdale, Arizona 85255
*Attorneys for Defendants*

CERTIFICATE OF SERVICE

I hereby certify that on August 27, 2026 I electronically transmitted the attached document to the Clerk's Office using the ECF System for filing, causing a copy to be electronically transmitted to the following ECF registrants:

Sean A. Woods
**MILLS + WOODS LAW, PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
swoods@millsandwoods.com
*Attorney for Plaintiff*

By: /s/ *Mary Walker*