Robert T. Mills (Arizona Bar No. 018853)
Sean A. Woods (Arizona Bar No. 028930)
MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com
swoods@millsandwoods.com
rmills@millsandwoods.com
*Attorneys for Plaintiff*

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014-2555
480.999.4556

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Tyrone Ross,<br><br>Plaintiff,<br><br>v.<br><br>Maricopa County Community College District, an Arizona public entity; Brent Cooper; Mark Woehl,<br><br>Defendants. | No. CV-25-01671-PHX-SMB<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br>(Oral Argument Requested)<br><br>(Assigned to the Hon. Susan M. Brnovich) |

Plaintiff Tyrone Ross, by and through undersigned counsel, pursuant to Fed. R. Civ. P. 56 and LRCiv 56.1, respectfully requests that the Court deny Defendants' Motion for Summary Judgment (Doc. 32) (the "Motion") because the claims are timely and the record presents genuine disputes of material fact on notice and deliberate indifference. This Response is supported by the following Memorandum of Points and Authorities, Plaintiff's Controverting Statement of Facts and Statement of Additional Facts ("PSOF"), and the record. Paragraphs 1 through 51 of the PSOF respond to Defendants' Statement of Facts (Doc. 33) ("DSOF"), and paragraphs 52 through 81 set out additional facts.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiff, a Black student, enrolled in the collision repair program at GateWay Community College. Doc. 12 ¶ 1. On the first day of class, his instructor, Brent Cooper, told him about a lynching he had watched as a boy. Plaintiff reported it to Mr. Cooper's supervisor that day and went back to him "[a]lmost more than ten times" over the next

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

seven months. That supervisor, Program Manager Mark Woehl, admits Plaintiff told him Mr. Cooper was using the n-word, and his response was to send Plaintiff back to talk to Mr. Cooper. PSOF ¶¶ 59-62.

Defendant Maricopa County Community College District (the "District") later substantiated the slur, and in December 2022 its own human resources office decided that Mr. Cooper had to be removed while the investigation ran. Mr. Cooper was not removed despite this. Instead, the District sent Plaintiff back into the same shop under a no-contact arrangement that Mr. Cooper's own supervisor never heard of, and Mr. Cooper went on leave only after Plaintiff complained a second time.

The Motion alleges the response was prompt, reasonable, and effective. Mot. 8:18-20. A jury could find otherwise. The Motion also argues that the claims are untimely, but the District did not decide Plaintiff's retaliation complaint until May 17, 2023, and the OCR complaint Plaintiff was pursuing against the District tolled the period in any event. The Motion never mentions the OCR proceeding.

## II. BACKGROUND

Plaintiff began the program in the spring of 2022. On the first day, Mr. Cooper described the lynching, and Plaintiff reported it to Mr. Woehl. PSOF ¶ 59. Mr. Woehl was Mr. Cooper's only supervisor and evaluated, among other things, how he "interacted with the students." PSOF ¶¶ 53-54. Over the next seven months, Plaintiff complained to Mr. Woehl "[a]lmost more than ten times." PSOF ¶ 60. Mr. Woehl testified that he passed those concerns to the acting dean and shared his notes of the visits with the dean and the Vice President, but Mr. Woehl no longer has those notes. PSOF ¶ 63.

Plaintiff put his complaint in writing on December 6, 2022 and emailed it to Mr. Woehl and the acting dean. PSOF ¶¶ 10, 12. Two days later it reached Dr. Delfina Wilson, the Vice President of Student Affairs. DSOF ¶ 14. Four days later, District human resources wrote that "we would need to remove this employee while the investigation is concluded," but the Interim Vice President of Academic Affairs held off

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

because "the student is no longer attending." PSOF ¶ 65. Plaintiff was not attending because he had been told he did not need to come back, and the District then dropped him for absences. PSOF ¶¶ 18-19.

When the District let Plaintiff return on February 8, 2023, it put him back in the shop where Mr. Cooper was still teaching. PSOF ¶ 67. On about the second day, Mr. Woehl moved the substitute instructor, Michael Hernandez, to cover another class, and Mr. Cooper then directed Plaintiff's work every day. PSOF ¶ 70.

By February 27, 2023, the District's investigators had confirmed the slur and concluded that Mr. Cooper "directly contributed to the creation of a hostile learning environment" for Plaintiff. PSOF ¶ 27; PX 8 at ROSS_000003, ROSS_000006. Plaintiff reported retaliation on March 7, 2023, and the District placed Mr. Cooper on leave two days later. PSOF ¶¶ 29, 73. On April 13, 2023, the District told Plaintiff that "[t]he complaint of retaliation is being investigated and you will be informed of the outcome of the investigation." PSOF ¶ 76.

By mid-May, Plaintiff had also gone outside the District. He signed the consent form for his complaint to the U.S. Department of Education, Office for Civil Rights ("OCR"), on May 15, 2023. PSOF ¶ 78. Two days after that, the District decided the retaliation complaint, and under its own procedure the decision was to become final on May 30, 2023 absent a response. PSOF ¶ 77. The District went to mediation before OCR, and it was there, around December 2023, that it handed Plaintiff his certificate and told him Mr. Cooper was gone. PSOF ¶ 80. This suit followed on May 16, 2025. PSOF ¶ 81.

## III. ARGUMENT

### A. Summary Judgment Standard

Summary judgment is proper only where "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court therefore "may not resolve genuine disputes of

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

fact in favor of the party seeking summary judgment." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (per curiam).

**B. The District Bears the Burden on Limitations**

"[B]ecause the statute of limitations is an affirmative defense, the defendant bears the burden of proving that the plaintiff filed beyond the limitations period." *Payan v. Aramark Mgmt. Servs. Ltd. P'ship*, 495 F.3d 1119, 1122 (9th Cir. 2007). The parties agree that the period is two years. *Bonelli v. Grand Canyon Univ.*, 28 F.4th 948, 951-52 (9th Cir. 2022). Here, Plaintiff filed on May 16, 2025. PSOF ¶ 81. The District therefore must prove that each claim accrued before May 16, 2023 and that nothing tolled it, and for the reasons below it cannot.

**C. Count Two Challenges a District Decision Issued on May 17, 2023**

The District argues that "every act underlying Plaintiff's discrimination, retaliation, and/or hostile educational environment claims is attributed to Cooper." Mot. 6:3-5. A page later, it argues that Plaintiff "can hold the District liable for Cooper's alleged conduct *only*" by proving the District's own notice and deliberate indifference. Mot. 7:14-17 (emphasis in original). The second statement is the law, because the District's liability rests on "an official decision by the recipient not to remedy the violation." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998). The District cannot locate the wrong in its own response and then start the clock before that response existed.

A claim accrues when the plaintiff "knows or has reason to know of the injury which is the basis of the action." *Bonelli*, 28 F.4th at 952. Where the claim challenges an institutional decision, the period runs from the point at which the institution "established its official position" and "made that position apparent" to the plaintiff. *Del. State Coll. v. Ricks*, 449 U.S. 250, 262 (1980).

Here, Count Two alleges that the District "retaliated against Plaintiff by reneging on its plan to remediate the discrimination." Doc. 10 ¶ 116. Plaintiff reported retaliation on March 7, 2023, and on April 13, 2023 the District told him in writing that a decision

was coming. PSOF ¶¶ 73, 76. The District issued that decision on May 17, 2023. PSOF ¶ 77. It found that Mr. Cooper approached Plaintiff "on multiple occasions following his return to class," "despite prior conversations regarding the supportive measures to be put in place," yet it described no remedy for Plaintiff. PSOF ¶ 74. By its own terms, the decision was to become "final and concluded" on May 30, 2023 absent a response. PSOF ¶ 77. Both dates fall within two years of this lawsuit.

*Bonelli* and *Stanley* do not hold otherwise. In *Bonelli*, the university's acts were complete, and the plaintiff argued that a later internal review of an existing decision delayed accrual. 28 F.4th at 951, 953-55. In *Stanley*, the plaintiff identified no act during the limitations period and argued that continuing indifference kept the claim alive indefinitely. *Stanley v. Trs. of Cal. State Univ.*, 433 F.3d 1129, 1136-37 (9th Cir. 2006). Plaintiff makes neither argument; he challenges a decision that did not exist until May 17, 2023. "Each discrete discriminatory act starts a new clock," and earlier acts remain admissible "as background evidence in support of a timely claim." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**D. The OCR Complaint Tolled Both Claims**

When a federal civil rights claim borrows a state limitations period, courts also apply "the forum state's law regarding tolling, including equitable tolling . . . ." *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004). The en banc Ninth Circuit has allowed tolling of a borrowed period "during the time [the plaintiffs] pursued an administrative complaint with the OCR against the same defendant." *Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131, 1133 (9th Cir. 2001) (en banc).

Arizona asks whether there was "1) timely notice to the defendant by filing the first claim; 2) no prejudice to the defendant in gathering evidence to defend against the second claim; and 3) reasonable and good faith conduct by the plaintiff in prosecuting the first claim and diligence in filing the second claim." *Hosogai v. Kadota*, 145 Ariz. 227, 230 (1985). Arizona later enacted a savings statute for refiled lawsuits, but its courts still

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

apply equitable tolling, including where a plaintiff "first pursued [his] claim through [an] administrative grievance procedure." *McCloud v. State, Dep't of Pub. Safety*, 217 Ariz. 82, 87, ¶ 12 (App. 2007) (describing *Kosman v. State*, 199 Ariz. 184 (App. 2000)).

Here, each element is met. First, the District had timely notice, because Plaintiff signed his OCR consent form on May 15, 2023, and the District admits he filed the OCR complaint. PSOF ¶ 78; Doc. 12 ¶ 1. Second, the District suffered no prejudice, because it had already investigated both complaints and participated in OCR mediation on the same facts. PSOF ¶¶ 27, 74, 79-80. Third, Plaintiff acted in good faith by taking his complaint to the federal agency that enforces Title VI before he sued.

The District's earliest accrual date is March 9, 2023. Mot. 6:20-23. The OCR matter was pending from no later than May 15, 2023 through at least the September 12, 2023 mediation submission, a span of roughly four months. PSOF ¶¶ 78-79. Sixty-eight (68) days of tolling saves the claims from March 9, and thirty-three (33) days saves them from April 13. The Motion does not address tolling at all. A defendant moving for summary judgment on an affirmative defense must establish it “beyond controversy.” *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003). The District ignores the tolling facts entirely, so it has not carried that burden.

**E. The District's Own Accrual Dates Are Disputed**

The District's fallback is that the claims "could not have accrued later than April 13, 2023, his final day in the Program." Mot. 7:1-2. The record says otherwise, because Plaintiff returned to campus after that date for meetings with the District's investigator, and he did not receive his certificate until the OCR mediation around December 2023, after being told by email that he could not receive it. PSOF ¶¶ 31-32, 36. In fact, the District's position is that the certificate issued in February 2023, two months before the District says Plaintiff finished the program. PSOF ¶ 32. This is a genuine dispute of material fact.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**F. Mr. Woehl Was an Appropriate Person With Actual Notice**

The District argues that Mr. Woehl was "merely GWCC instructional personnel or staff" with no authority to investigate. Mot. 9:18-25. The test under *Gebser*, however, is whether the official had authority to take corrective action to end the discrimination, and that authority does not depend on who runs the formal investigation. An "appropriate person" is "an official of the recipient entity with authority to take corrective action to end the discrimination." *Gebser*, 524 U.S. at 290. "[D]eciding who exercises substantial control for the purposes of Title IX liability is necessarily a fact-based inquiry," and an official who can halt known abuse "by measures such as transferring the harassing student to a different class . . . or providing additional supervision" qualifies. *Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238, 1247 (10th Cir. 1999).

Corrective measures are not limited to discipline. They include "admonishing the teacher, conducting a thorough preliminary investigation, swiftly reporting the abuse, and monitoring the teacher's behavior." *Doe v. Sch. Bd. of Broward Cnty.*, 604 F.3d 1248, 1257 (11th Cir. 2010). Applying that test, a court in this Circuit refused to hold on summary judgment that the head of a program was not an appropriate person. *Roe ex rel. Callahan v. Gustine Unified Sch. Dist.*, 678 F. Supp. 2d 1008, 1034 (E.D. Cal. 2009).

Here, Mr. Cooper reported to Mr. Woehl, and only to Mr. Woehl, for five to six years, and Mr. Woehl evaluated his performance. PSOF ¶¶ 53-54. Complaints came to Mr. Woehl first, and students were told to bring every complaint to him rather than to the front office. PSOF ¶¶ 55-56. He also controlled instructor assignments, as shown when he and the Vice President took Mr. Cooper off Plaintiff and assigned Mr. Hernandez, and when Mr. Woehl later moved Mr. Hernandez to another class. PSOF ¶ 57. District policy made him a mandatory reporter of discrimination. PSOF ¶ 58. Mr. Woehl took no step to separate Plaintiff from Mr. Cooper because, as he put it, "I was never asked to." PSOF ¶ 62. A jury could find that the manager who supervised, evaluated, and assigned the harasser had authority to admonish him, monitor him, move the student, or report him.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Mr. Woehl also knew. Plaintiff reported the lynching story on the first day and complained "[a]lmost more than ten times," and Mr. Woehl admits Plaintiff told him about the n-word. PSOF ¶¶ 59-61. Notice reached his superiors as well. Mr. Woehl testified that he passed Plaintiff's discrimination concerns to the acting dean before any formal complaint, and that the dean and the Vice President had his notes. PSOF ¶ 63. On December 1, 2022, Mr. Woehl emailed Mr. Cooper, the Dean of Student Affairs, and the acting dean about "issues," and days later a dean wrote that a "related issue" in the class had gone to the District's behavioral team with "no follow up." PSOF ¶ 64.

Whether an official with authority knew of Mr. Cooper's conduct before December 8, 2022 is therefore a disputed fact. Because Mr. Woehl answered repeated reports of racial slurs by sending the Black student back to the instructor using them, a jury could also find that response "clearly unreasonable in light of the known circumstances." *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999).

**G. The District's Response After December 8, 2022 Was Clearly Unreasonable**

The District concedes actual notice by December 8, 2022. Mot. 9:13-17. The remaining question is whether its response was "clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648. A delayed response qualifies "if it prejudices the plaintiff . . . ." *Karasek v. Regents of Univ. of Cal.*, 956 F.3d 1093, 1106 (9th Cir. 2020). A school's response must also keep pace with what it learns. "[A]s the 'known circumstances' change, the sufficiency of a response may also have to evolve," and "[r]esponses that are not reasonably calculated to end harassment are inadequate." *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 668-69 (2d Cir. 2012); *see also Vance v. Spencer Cnty. Pub. Sch. Dist.*, 231 F.3d 253, 261 (6th Cir. 2000) (school that knows "its remedial action is inadequate and ineffective" must take further reasonable action).

The District says it "issued a no-contact directive prohibiting Cooper from speaking to Plaintiff and reassigned Plaintiff to a different instructor, Hernandez, for the

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

remainder of the Program." Mot. 11:13-15. This is disputed and the record says otherwise. A jury could find the District's response clearly unreasonable for several independent reasons.

First, the District decided Mr. Cooper should be removed and then failed to do so. Its human resources office concluded on December 12, 2022 that "we would need to remove this employee while the investigation is concluded," and Mr. Cooper stayed for three more months. PSOF ¶ 65. Second, the District sent Plaintiff back to Mr. Cooper. Plaintiff returned on February 8, 2023 to what Mr. Woehl calls "one huge area," with Mr. Cooper still teaching in it, less than three weeks before the investigators substantiated the slur. PSOF ¶¶ 27, 66-67. Third, the no-contact arrangement existed only on paper. Mr. Woehl, Mr. Cooper's supervisor, knew of no no-contact directive and never raised one with Mr. Cooper. PSOF ¶ 26. Mr. Hernandez lasted about two days before Mr. Woehl moved him, and Mr. Cooper then directed Plaintiff's work, put him to work on a friend's car, and kept him out of the paint booth. PSOF ¶¶ 70-71. This is not Plaintiff's account alone. The District's May 17, 2023 decision found that Mr. Cooper approached Plaintiff "on multiple occasions following his return to class," "despite prior conversations regarding the supportive measures to be put in place," and after Mr. Cooper had proposed isolating Plaintiff from the class and been told not to. PSOF ¶ 74. Fourth, Mr. Woehl joined the pressure. On Plaintiff's first morning back, Plaintiff overheard him coaching Mr. Cooper on how to turn students against Plaintiff "without him getting in trouble," and Mr. Woehl later said he wanted Plaintiff out "by Friday." PSOF ¶¶ 68, 72. When Plaintiff reported the recording, the District told him he could not record people rather than asking to hear it. PSOF ¶ 69. The Vice President of Student Affairs had already told him his complaints were "in my head." Id. Finally, the delay prejudiced Plaintiff. After his December complaint, the District told him he did not need to return and then dropped him for absences, which cost him two months. PSOF ¶¶ 10, 18-19, 67. Much of the make-up time he received on his return went to a car Mr. Cooper chose for him. PSOF ¶ 25.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

The District's cases are distinguishable. The college in *Oden* "began to act as soon as it became aware of Plaintiff's allegations," helped the student drop the instructor's class immediately, and ordered the instructor to have no contact with her, and there was "no evidence in the record that the delay prejudiced Plaintiff." *Oden v. N. Marianas Coll.*, 440 F.3d 1085, 1089 (9th Cir. 2006). Even so, the Ninth Circuit declined to decide "that a delay never can constitute deliberate indifference." *Id.* In *Karasek*, the student never interacted with her assailant again, so the university "had no reason to know that preventative measures were necessary . . . ." 956 F.3d at 1109. Here, the District knew; it adopted protective measures and let them lapse. *Garcia* was a pleadings decision in which the school district escalated each time it learned more. *Garcia ex rel. Marin v. Clovis Unified Sch. Dist.*, 627 F. Supp. 2d 1187, 1197-98 (E.D. Cal. 2009). Even *Garcia* recognized that "continuing to utilize the same response after it has been shown to be ineffective" may show deliberate indifference. *Id.* at 1196.

The District also relies on Plaintiff's testimony that there was nothing the District could have done. Mot. 12:7-10. The rest of that answer reads: "I don't think that they wanted to, so I don't think there was no solution because of that." PSOF ¶ 48. Plaintiff's ***full*** answer shows he did not believe the District would respond appropriately, which it did not. Regardless, even if Plaintiff had not responded in full, Plaintiff is not an administrator or even a teacher at GateWay, nor has he ever been. Whether the District took appropriate action is a disputed question of fact for the jury.

**H. The Motion Does Not Challenge the Elements of Retaliation**

The District agrees that Title VI and Title IX "operate in the same manner." Mot. 7:19. A Title IX retaliation plaintiff must show "(a) that he or she was engaged in protected activity, (b) that he or she suffered an adverse action, and (c) that there was a causal link between the two," and need make only "a minimal threshold showing of retaliation." *Emeldi v. Univ. of Or.*, 698 F.3d 715, 724 (9th Cir. 2012).

Here, the Motion challenges none of those elements and argues only limitations and deliberate indifference, both of which fail for the reasons above. The record also supports each element. Plaintiff complained repeatedly, and when he returned, Mr. Woehl and Mr. Cooper discussed how to push him out; Mr. Hernandez was then pulled, and Mr. Cooper isolated Plaintiff and blocked his work. PSOF ¶¶ 68-72. The District's own decision substantiated Mr. Cooper's conduct toward Plaintiff after his return. PSOF ¶ 74.

**IV. CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the Motion in its entirety.

RESPECTFULLY SUBMITTED this 13th day of October 2026.

MILLS + WOODS LAW, PLLC

By /s/ Sean A. Woods
Robert T. Mills
Sean A. Woods
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
*Attorneys for Plaintiff*

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**CERTIFICATE OF SERVICE**

I hereby certify that on October 13, 2026, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Justin S. Pierce
Alexandra N. Cayton
PIERCE COLEMAN PLLC
17851 North 85th Street, Suite 175
Scottsdale, Arizona 85255
Justin@PierceColeman.com
Alex@PierceColeman.com
Attorneys for Defendants

/s/ Sean A. Woods