Justin S. Pierce (State Bar #022646)
Alexandra N. Cayton (State Bar #038580)
**PIERCE COLEMAN PLLC**
17851 North 85th Street, Suite 175
Scottsdale, Arizona 85255
Tel. (602) 772-5521
Fax (602) 772-5509
Justin@PierceColeman.com
Alex@PierceColeman.com
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Tyrone Ross,<br><br>Plaintiff,<br><br>v.<br><br>Maricopa County Community College District, an Arizona public entity; Brent Cooper; Mark Woehl,<br><br>Defendants. | Case No.: 2:25-CV-01671-PHX-SMB |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment (the "Response") highlights that summary judgment is warranted.

**ARGUMENT**

## I. PLAINTIFF'S TITLE VI CLAIMS REMAIN TIME-BARRED.

### A. Plaintiff's Title VI Claims Accrued in March 2023.

Plaintiff's Response does not rescue his untimely claims. His argument that his retaliation claim accrued on May 17, 2023, when the District issued its investigative findings on his retaliation complaint, contradicts well-established accrual principles. A Title VI claim accrues when the plaintiff "knows or has reason to know of the injury which is the basis of the action." *Bonelli v. Grand Canyon Univ.*, 28 F.4th 948, 952 (9th Cir. 2022); *see Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1049, 1051 (9th Cir. 2008) (noting that a claim accrues upon awareness of the adverse action, "not when the plaintiff suspects a legal wrong."). Plaintiff unquestionably knew of Cooper's alleged retaliatory conduct no later than March 9, 2023, when Cooper was placed on administrative leave and removed from the classroom. [SOF 29; PSOF 29; Resp. at 3 (admitting he reported Cooper's alleged retaliatory behavior on March 7, 2023)].[1]

*Bonelli* is instructive. There, the student plaintiff received a disciplinary warning, the university investigated, found that he suffered racial discrimination, and rescinded the warning. 28 F.4th at 950–51. The student subsequently sued under Title VI, and the trial court found his claims untimely. *Id.* On appeal, he argued his claims did not accrue until the warning was rescinded. *Id.* at 953. The Ninth Circuit rejected that theory, holding the claim accrued when the discrimination occurred—otherwise "the statute would begin to run only after a plaintiff became satisfied that he had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief." *Id.* at 954. So too

[1] April 13, 2023, was Plaintiff's last day in the Program, and he testified that he did not believe he returned to GWCC after April 14, 2023. [*See* SOF 31, 36]. Thus, even setting aside the undisputed evidence that Cooper's last day in the Program was March 9, 2023, Plaintiff cannot base any claim on Cooper's alleged misconduct (or anyone else, for that matter) after April 13, 2023, because Plaintiff had already completed the Program. Furthermore, it is not "material" that Plaintiff's Certificate reflects a completion date of February 2023. [*See* Resp. at 6]. If anything, that date would place Plaintiff's completion of the Program even earlier, further confirming that his claims are untimely. [*See* SOF 32].

here. Plaintiff was aware of Cooper's alleged retaliation before the District completed its investigation. [Resp. at 3]. The District's May 17, 2023 determination substantiating Plaintiff's complaint did not create a new injury; it merely confirmed allegations Plaintiff had already raised, and his subjective interpretation of that response cannot delay accrual.

Plaintiff's Response blurs the distinction between the alleged underlying misconduct and the District's response to it. This case is not based on discrimination or retaliation by the District itself. It concerns Cooper's alleged conduct and whether the District responded appropriately after learning of it. Plaintiff's allegation that the District "retaliated against Plaintiff by reneging on its plan to remediate the discrimination" is therefore part of his deliberate-indifference theory, not an independent retaliation claim against the District. [*See* Resp. at 4]. It challenges the adequacy of the District's response, not a separate adverse action taken because Plaintiff engaged in protected activity.

Plaintiff's reliance on *Delaware State Coll. v. Ricks*, 449 U.S. 250, 252 (1980) is misplaced. There, the plaintiff challenged the college's own decision to deny him tenure. *Id.* The Supreme Court found that the injury occurred when the college communicated the tenure decision, not when it later denied his grievance. *Id.* at 259–61. Likewise, Plaintiff's alleged injury arose from Cooper's purported retaliatory conduct in February and March 2023, not from the District's later communication sustaining his retaliation complaint.

To the extent the Court construes the single, conclusory allegation that the District "reneg[ed]" on its alleged remediation plan as an independent retaliation claim against the District itself (which it should not), that claim fails as a matter of law.[2] The record contains no evidence of retaliatory conduct after Cooper was placed on leave. [Doc. 32 at 11]. Plaintiff's speculation to the contrary cannot create a genuine dispute of material fact. *See*

[2] Plaintiff's timeliness argument also exposes a separate defect in his case. To avoid the statute of limitations, Plaintiff focuses exclusively on the District's alleged failure to follow through on remediation efforts and argues that his retaliation claim accrued on May 17, 2023, when the District issued its investigative findings. But by tying accrual of his retaliation claim to the issuance of the May 2023 investigative findings, Plaintiff necessarily concedes that his discrimination and harassment claims accrued earlier, when the District released its findings on Complaint 1 on March 10, 2023. [PSOF 27 at ROSS 3]. Even Plaintiff's own flawed theory shows that his discrimination and harassment claims remain time-barred.

*Nelson v. Pima Community College*, 83 F.3d 1075, 1081–82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment"). And, Plaintiff's unsupported theory that the District reneged on its remediation plan is belied by the undisputed record: The District sustained Plaintiff's allegations against Cooper, who then resigned in lieu of termination. [*Id.*; *see* PSOF 27, 39, 41, 74].[3]

Plaintiff's claims accrued no later than March 9, 2023 when he admittedly knew of all of Cooper's alleged misconduct. His claims are untimely as a matter of law.

**B. Administrative and Equitable Tolling Are Not Available.**

Plaintiff's filing of a complaint with the U.S. Department of Education Office for Civil Rights ("OCR") did not toll the limitations period. Title VI does not require a plaintiff to exhaust administrative remedies before filing suit. *Chalmers v. Intel Corp.*, No. CV-12-00020-PHX-GMS, 2012 WL 4514042, at *2 (D. Ariz. 2012) (noting that "Title VI does not require that plaintiffs exhaust the administrative process before bringing suit."). Because administrative exhaustion is not a prerequisite to suit, Plaintiff's voluntary pursuit of administrative remedies does not, standing alone, toll the limitations period. *See Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 466 (1975) (Plaintiff "could have filed his [federal] action at any time after his cause of action accrued," so his decision to pursue an administrative process does not toll the limitations period); *United States v. Marsh*, 89 F. Supp. 2d 1171, 1176–1177 (D. Haw. 2000) ("When a complainant is not required to exhaust his administrative remedies before bringing suit…the statute of limitations is not tolled, even if the complainant chooses to seek optional administrative remedies.").

Plaintiff's reliance on *Daviton v. Columbia/HCA Healthcare Corp.* is unavailing. 241 F.3d 1131 (9th Cir. 2001). *Daviton* was an equitable-tolling decision expressly

[3] Nor is there any legitimate evidence that the District harbored any retaliatory motive. The District disputes that Wilson told Plaintiff that his complaints were in his head and impossible. [*See* Resp. at 9]. Regardless, that statement is immaterial because the District ultimately sustained both of Plaintiff's internal complaints, and the District took no adverse action against him. [SOF 27, 32, 39]. One alleged comment is not sufficient to establish a retaliatory motive. *See Hernandez v. Arizona*, 702 F. Supp. 2d 1119, 1125–26 (D. Ariz. 2010) ("[A]n employer's ambiguous remark, that is not directly related to an adverse employment decision, is insufficient to preclude summary judgment."); *Nelson*, 83 F.3d at 1081. Plaintiff cannot establish a viable retaliation claim against the District.

grounded in California law. *Id.* at 1133–1138.[4] It did not establish that filing an OCR complaint automatically tolls the limitations period for a subsequent federal lawsuit. *See id.* As Plaintiff acknowledges, federal courts apply the forum state's tolling principles when borrowing its statute of limitations. [Resp. at 5]. Arizona law—not California law—governs whether Plaintiff's claims are subject to equitable tolling. *See TwoRivers v. Lewis*, 174 F.3d 987, 992 (9th Cir. 1999). And contrary to Plaintiff's assertion, Defendants do not bear the burden of establishing that equitable tolling is inapplicable. Instead, the burden rests squarely with Plaintiff. *See McCloud* 170 P.3d at 694 (noting that it is the plaintiff's burden to establish equitable tolling). Plaintiff has failed to meet that burden.

Under Arizona law, equitable tolling may apply if a plaintiff has "been prevented from filing in a timely manner due to sufficiently inequitable circumstances." *Id.* at 696. The plaintiff must establish that he was prevented from timely filing because of 'extraordinary circumstances.'" *Id.* at 698. Equitable tolling is "used only sparingly," and "do[es] not extend to…a garden variety claim of excusable neglect." *Id.* at 697. Its applicability is a question of law for the court. *Id.* at 695.

*Hosogai* does not support Plaintiff's position.[5] There, the plaintiff timely filed a lawsuit, obtained a favorable jury verdict, but the judgment was reversed due to defective service. 700 P.2d at 1329. She then promptly filed a new lawsuit asserting the same claim after the limitations period expired. *Id.* The Arizona Supreme Court found equitable tolling, emphasizing that she had acted reasonably and diligently. *Id.* at 1334. The court explained:

> Petitioner acted reasonably in believing that service of process by at least one of three methods had been effective. In particular, personal service by the Japanese process server was invalidated by this Court [] on extremely arcane grounds, requiring an eight-page discussion of a treaty with Japan regarding service of

---

[4] Arizona and California apply different equitable-tolling standards. Importantly, California's test does not expressly require a showing of diligence or sufficiently inequitable circumstances. *Compare Daviton*, 241 F.3d at 1133, *with Hosogai v. Kadota*, 700 P.2d 1327, 1329 (Ariz. 1985) & *McCloud v. State, Ariz. Dep't of Pub. Safety*, 170 P.3d 691, 694 (Ariz. Ct. App. 2007).

[5] Arizona's savings statute is not applicable, as it provides a remedial mechanism that allows a plaintiff whose timely filed civil action was terminated after the statute of limitations has run to commence a new action for the same cause of action within six months of that termination. Plaintiff's OCR complaint was not a civil action.

> process. It was reasonable for petitioner to follow the procedures for service of process permitted in subparagraphs (b) and (c) of article 10 of this treaty…Finally, petitioner filed the second action only eight days after we denied review of the Court of Appeals decision in the first action.

*Id.* (citations omitted). *Hosogai* bears no resemblance to the facts here.[6] Unlike the *Hosogai* plaintiff, Plaintiff did not timely commence a *judicial action* later reversed for a procedural defect. Instead, he voluntarily pursued an administrative remedy through the OCR. Nor has Plaintiff demonstrated reasonable diligence. Although he asserts his OCR complaint remained pending through at least September 12, 2023, he offers no explanation for his failure to file suit during the roughly 20 months that followed, before commencing this action on May 16, 2025. *See Hargrow v. Fed. Exp. Corp.*, No. 03-0642-PHX-DGC, 2006 WL 269958, at *2 n.4 (D. Ariz. 2006) (subsequent history omitted) ("Because Plaintiff offers no explanation for his failure to file within the statutory period, the Court cannot conclude that equitable tolling would be appropriate."). By contrast, the *Hosogai* plaintiff filed her second lawsuit just eight days after the court denied review. 700 P.2d at 1334. Plaintiff's unexplained delay stands in stark contrast to the diligence demonstrated in *Hosogai*. Instead, Plaintiff's circumstances parallel those in *McCloud*, where the plaintiff served her notice of claim nearly six months before the deadline but waited until almost three months after the limitations period expired to file suit. 170 P.3d at 694. Plaintiff likewise filed his action on May 16, 2025—68 days after the limitations period expired.

Courts reserve equitable tolling for exceptional circumstances, such as when a plaintiff or counsel suffers severe incapacity or when the defendant or court misleads the plaintiff in a way that prevents timely filing. *See id.* at 698; *Porter v. Spader*, 239 P.3d 743, 747 (Ariz. Ct. App. 2010). Plaintiff offers no such evidence. Nothing in the record suggests that circumstances beyond Plaintiff's control prevented him from filing suit on time. *See McCloud*, 170 P.3d at 694; *Coleman v. Lawler*, No. CV1905376PHXSMBJZB, 2022 WL 1558838, at *5 (D. Ariz. 2022) ("Extraordinary circumstances must be supported with evidence, not simply with personal conclusions or assertions."). His

[6] Defendants acknowledge that the District had notice of the OCR complaint. However, notice of an administrative complaint is not notice that Plaintiff intends to pursue litigation under Arizona law. *See Hosogai*,700 P.2d at 1333.

voluntary pursuit of the OCR complaint, without more, cannot justify equitable tolling. Because Plaintiff's claims accrued more than two years before he filed suit, and he has failed to establish any basis for equitable tolling, his claims are time-barred.

## II. THE DISTRICT CANNOT BE HELD LIABLE UNDER TITLE VI.

### A. Woehl Was Not an "Appropriate Person."

Plaintiff mistakenly contends that notice to Woehl constituted notice to the District. The District never argued that Woehl was not an appropriate official merely because he did not conduct discrimination and/or harassment investigations; rather, that was only one of several reasons he lacked authority to address alleged discrimination and institute corrective measures on the District's behalf. [Doc. 32 at 9]. District officials testified that Woehl had no authority to receive and investigate discrimination complaints or to decide such complaints on the District's behalf. [SOF 51]. Plaintiff must set forth specific facts that create a genuine issue of material fact disputing that testimony. *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1059 (9th Cir. 2012). He has not done so (and cannot).

The District's handling of Plaintiff's internal complaints confirms this. After Plaintiff submitted Complaint 1, the matter was properly elevated to VP of Student Affairs Delfina Wilson ("Wilson"). [SOF 10, 14, 15]. Thereafter, Wilson, not Woehl, directed and oversaw the District's response to both Plaintiff's complaints. [*See* SOF 16, 22–29, 38]. Then, GWCC's President communicated the investigation outcomes to Plaintiff. [SOF 27, 39; PSOF 27, 39, 73]. It is undisputed that Woehl had no involvement in addressing Plaintiff's allegations against Cooper, and Woehl never claimed to possess such authority. He testified that if a student wanted to file a formal complaint, Woehl would forward it to Craig Urbanski ("Urbanski"), who would then submit it to Wilson for investigation under GWCC's policy. [*See* SOF 51 at Woehl Dep. 26:12–27:1]. Woehl had no other role.

Plaintiff's authorities do not support his position. In *Murrell*, the plaintiff reported a harasser's conduct to the school's principal, and the court found, "little room for doubt that the highest-ranking administrator at [the school] exercised substantial control of [the teacher] and the [school] environment during school hours, and so her knowledge may be

charged to the School District." *Murrell v. Sch. Dist. No. 1, Denver*, 186 F.3d 1238, 1247 (10th Cir. 1999). Woehl had no comparable authority. [*See* SOF 4]. In fact, *Doe v. School Board of Broward County* supports Defendants' position that Woehl was not high enough in the District's chain of command for his alleged knowledge to constitute actual notice to the District. 604 F.3d 1248, 1255 (11th Cir. 2010). There, the court discussed its prior decision where it found that notice to a janitor's direct supervisor who was "at least three levels removed from the [school's] superintendent" could not expose the district to liability. *Id.*; *see also Floyd v. Waiters*, 133 F.3d 786, 793 & n.15 (11th Cir. 1998) (subsequent history omitted). The Eleventh Circuit explained:

> In reinstating our decision in light of *Gebser,* we articulated our only elaboration of the Supreme Court's "appropriate person" requirement, commenting that the official with notice of the harassment must be "high enough up the chain-of-command that his acts constitute an official decision by the school district itself not to remedy the misconduct." A janitorial supervisor was plainly not "high enough up the chain-of-command" for his deliberate indifference to known harassment to impose liability on the school district.

*Id.* (citation omitted). Woehl's position is analogous to that of the janitor's supervisor in *Floyd*, whom the court found was not sufficiently senior to provide actual notice to the district. *Id.* Woehl was the Program Manager for GWCC's "clock hour" programs. [SOF 4]. His supervisor at the time was Urbanski, GWCC's Institutional Technology Division Chair. [SOF 10]. Woehl was at least three levels removed from GWCC's President, its highest-ranking administrator. [*See* SOF 4, 10, 14, 15; *see* PSOF 64]

By contrast, the *Doe* court found actual notice only because, as in *Murrell*, the student reported misconduct to the principal. 186 F.3d at 1255. The court stated that it was "not persuaded…that the Supreme Court intended final employment decisions such as suspending, terminating, or reassigning an offending teacher to be the *only* corrective measures giving an official the power to remedy sexual harassment." *Id.* at 1257. The court explained that the principal was equipped with "other means of deterring or stopping sexual harassment of students, such as admonishing the teacher, conducting a thorough preliminary investigation, swiftly reporting the abuse, and monitoring the teacher's behavior." *Id.* While Woehl supervised Cooper in the ordinary course of the Program,

unlike the principal in *Doe*, Woehl's supervisory authority did not extend to investigating, adjudicating, or resolving complaints of discrimination, harassment, or retaliation against Cooper—consistent with the District's written policies. [SOF 7, 8, 51].

Finally, *Roe ex rel. Callahan* is inapposite. There, the plaintiff alleged that he was assaulted by another student during football camp and sought to hold the district liable. 678 F. Supp. 2d 1008 (E.D. Cal. 2009). In arguing that the *Roe* court refused to find that a program head was not an "appropriate person," Plaintiff ignores a critical aspect of the court's analysis. The district in *Roe* did not challenge whether the coach (*i.e.*, the program head) qualified as an "appropriate person" under *Gebser*. *Id.* at 1033. Instead, the district argued that the coach had no notice of the alleged misconduct. *Id.* The court observed that the issue had not been "thoroughly briefed" and that the record was insufficient to establish, as a matter of law, that the coach lacked the requisite authority, explaining:

> At the time of the camp, Gustine High did not employ an athletic director, which may have created an administrative void between the head football coach and the principal. The record demonstrates that Scudder formulated every aspect of the Gustine High football program, as well as the July 2006 football camp. He was the chief administrator and disciplinary authority over the football program. As to the July 2006 football camp, Scudder acted as an administrative proxy between the football program and GUSD…and was admittedly responsible for the athletes 'on and off the field.' He also…was considered the 'school personnel in charge' under GUSD's Administrative Directive.

*Id.* at 1033–34.

Here, the undisputed evidence is that Woehl was not an appropriate person under District policy, the factual record in this case, or the law. Woehl's position bears little resemblance to that of the coach in *Roe*. In *Roe*, the court's analysis was influenced, in part, by the unique circumstances of the football camp, where the school district's policy stated that the coach was the highest-ranking individual in charge of the camp. *Id.* By contrast, Woehl was not vested with comparable authority under District policy. Indeed, multiple levels of authority separated Woehl from GWCC's President, and District policy required him to report allegations of misconduct through the appropriate channels rather than independently investigate, resolve, or take corrective action for the District. [*See* SOF 7, 8, 51]. Woehl's status as a mandatory reporter also does not make him an "appropriate

person." [*See* PSOF 58]. The Tenth Circuit's decision in *Ross v. University of Tulsa* is instructive. There, the school district designated campus security as a proper recipient of sexual harassment reports. 859 F.3d 1280, 1289 (10th Cir. 2017). The plaintiff argued that, "security's role in receiving and forwarding complaints means that campus-security officers 'institute corrective measures' for the University[.]" *Id.* The court disagreed, and found that the plaintiff's argument "would stretch the Supreme Court's opinion in *Gebser* … And merely passing on a report of sexual harassment to someone authorized to take corrective action is not itself corrective action … To decide otherwise would turn the deliberate-indifference standard into vicarious liability." *Id.* at 1289–90 (citations omitted). Plaintiff has not presented legitimate evidence that Woehl had authority to address discrimination and implement corrective measures on the District's behalf, and no reasonable jury could conclude otherwise. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998). The evidence is that the District received actual notice on December 8, 2022, when Wilson received Complaint 1.[7] [Doc. 32 at 8–9].

**B. The District's Response Was Not "Clearly Unreasonable."**

Upon receiving Complaint 1, the District acted promptly and reasonably. Plaintiff faults the District because an official initially said Cooper should be removed from the classroom but he was not removed at that time. [Resp. at 9]. That omits critical context. As Plaintiff acknowledges, the VP of Academic Affairs stated that she and Wilson were "waiting for clarification on whether or not we need to pull the instructor even though the student is no longer attending." [PSOF 65]. Plaintiff was not attending the Program as of

---

[7] Plaintiff's Response attempts to create an impression that Woehl notified Urbanski of Plaintiff's discrimination and harassment concerns before December 6, 2022. [Resp. at 2]. Plaintiff misstates Woehl's testimony. Woehl never testified that he shared Ross's specific concerns with Urbanski before December 6, 2022. There is no evidence that Urbanski was actually aware of Plaintiff's allegations of discrimination/harassment. In any event, the argument is irrelevant because Plaintiff has not shown that Urbanski was an "appropriate person" under *Gebser*, and Wilson's testimony indicates that he was not. [*See* SOF 7]. Plaintiff's Response also suggests the District had notice of Cooper's alleged conduct prior to December 8, 2022. [Resp. at 8]. It did not. The official's comments reflect that Plaintiff had raised a *different*, but related, concern. [*See* PSOF 64 at MCCCD-Ross 465]. Those comments do not establish notice of Cooper's alleged discriminatory and/or harassing conduct, nor do they show that the District responded unreasonably.

December 6, 2022. [SOF 17–18; Doc. 11-1 ¶ 88]. Thus, when the District evaluated whether to remove Cooper, they knew that Plaintiff and Cooper no longer had contact. The District did not act unreasonably by not immediately removing Cooper.

Furthermore, it is undisputed that the District implemented a no-contact directive between Plaintiff and Cooper, which Plaintiff agreed to.[8] Both Wilson and Plaintiff testified that the no-contact directive was in place. [SOF 24, 26]. Although Cooper continued teaching in the same facility, Plaintiff was assigned to work exclusively with Hernandez. [SOF 24]. Even assuming Woehl later reassigned Hernandez, the District had no actual notice of that.[9] [Resp. at 3, 9]. Wilson testified Plaintiff remained under Hernandez's supervision until he finished the Program, and Cooper was never reassigned to supervise him. [SOF 24, 26]. Evaluating the response with hindsight is improper, and the directive's imperfect effectiveness does not establish deliberate indifference. *Garcia ex rel. Marin v. Clovis Unified Sch. Dist.*, 627 F. Supp. 2d 1187, 1197–1198 (E.D. Cal. 2009). What matters is that once the District learned the measure did not work, it placed Cooper on leave, investigated, and sustained the complaint. [SOF 28–30, 38; PSOF 73].

Plaintiff also contends that he was prejudiced because the District delayed and "told him that he did not need to return and then dropped him for absences, which cost[] him two months." [Resp. at 9]. The record shows otherwise. Plaintiff admittedly stopped

---

[8] After Plaintiff's counsel asked Woehl whether a no-contact directive existed, Woehl subsequently testified that, upon Plaintiff's return to the Program, Hernandez was assigned as Plaintiff's instructor and Cooper was informed that he was no longer Plaintiff's instructor. [*See* PSOF 26 at Woehl Dep. 73:8–25]. Thus, Woehl's testimony, viewed in full, reflects that the District took steps to separate Plaintiff and Cooper. Moreover, even if Woehl was not aware of the no-contact directive, that fact is immaterial because both Wilson and Plaintiff testified that it existed. [SOF 24, 26].

[9] Plaintiff's Response and PSOF refer to a recording of a conversation between Cooper & Woehl that Plaintiff secretly recorded. [Resp. at 9; PSOF 68–69 at Ross Dep. 92:10–13]. To the extent Plaintiff relies on that recording, he made it in violation of Arizona's wiretapping statute because he secretly recorded a conversation to which he was not a party, a class five felony. *See* A.R.S. § 13-3005. Accordingly, the recording is inadmissible and cannot create a genuine issue of material fact. In any event, although the District disputes Plaintiff's characterization of Woehl's alleged statements, those statements are immaterial because there is no evidence that the District was aware of them, among other reasons. Plaintiff never raised concerns about Woehl with the District. [*See* SOF 10, 14, 27, 28; PSOF 27, 39].

attending the Program on December 6, 2022. [SOF 18; FAC ¶ 88]. When he raised concerns about being dropped, the District investigated and confirmed that Cooper withdrew him on December 13, 2022, for excessive absences under District policy. [SOF 17–22]. When he wished to return, the District developed a readmission plan. [*Id.*]. His absences, not any wrongful District action, led to his withdrawal. Nor did the District delay. It repeatedly tried to meet with Plaintiff, but he did not respond; when the District finally met with him, it readmitted him a few days later. [*See* SOF 23, 24]. The record also shows that the District followed its policies and timelines in investigating and resolving Plaintiff's complaints. [SOF 40].

Plaintiff's testimony also demonstrates that he was not prejudiced. He completed the Program within the timeframe he originally expected, earning "A" grades and his Certificate.[10] [SOF 25, 31–34]. It is also undisputed that Plaintiff testified he did not believe there was anything the District could have done differently to address Cooper's alleged harassment. [SOF 48]. Plaintiff attempts to soften that admission by arguing that he simply lacked confidence in the District's willingness to respond appropriately. [Resp. at 10]. Either way, the testimony is fatal to his claim. If no additional action would have remedied the situation, then Plaintiff cannot establish that the District's response was clearly unreasonable. And Plaintiff's subjective skepticism about the District's motives is not evidence and cannot create a genuine dispute of material fact. *Nelson*, 83 F.3d at 1081–82. The overwhelming evidence shows that the District promptly and effectively addressed Plaintiff's concerns. The District did not respond in a clearly unreasonable manner after learning of Cooper's alleged misconduct. Therefore, Plaintiff has not (and cannot) establish that the District acted with deliberate indifference. The Court should grant summary judgment in Defendants' favor on all claims.

[10] Plaintiff claims he did not receive a copy of his certificate until the OCR mediation in December 2023. Even if true, when he received a physical copy does not determine when he earned the certificate. The undisputed evidence establishes that Plaintiff successfully completed the Program in April 2023, earning his Certificate. [SOF 31, 32]. Any later delivery merely reflected when Plaintiff received a copy of a credential he had already earned; it did not alter the date of completion. Accordingly, the timing of when Plaintiff received a physical copy of the certificate is immaterial to any claim in this case.

RESPECTFULLY SUBMITTED this 28th day of October, 2026.

**PIERCE COLEMAN PLLC**

By /s/*Alexandra N. Cayton*
Justin S. Pierce
Alexandra N. Cayton
17851 North 85th Street, Suite 175
Scottsdale, Arizona 85255
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2026 I electronically transmitted the attached document to the Clerk's Office using the ECF System for filing, causing a copy to be electronically transmitted to the following ECF registrants:

Sean A. Woods
**MILLS + WOODS LAW, PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
swoods@millsandwoods.com
*Attorney for Plaintiff*

By: /s/ *Mary Walker*